UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MIDCONTINENT COMMUNICATIONS,<br><br>Plaintiff,<br><br>vs.<br><br>MCI COMMUNICATIONS SERVICES, INC.,<br>d/b/a VERIZON BUSINESS<br><br>Defendant. | 4:16-CV-04070-KES<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Defendant, MCI Communications Services d/b/a Verizon (Verizon), moves to dismiss Count II of plaintiff's complaint pursuant to 12(b)(6) of the Federal Rules of Civil Procedure and to dismiss plaintiff's request for declaratory relief to the extent that it relies on Count II. Docket 8. Plaintiff, Midcontinent Communications (Midco), opposes the motion. Docket 10.

**FACTUAL BACKGROUND**

Viewed in the light most favorable to Midco, the nonmoving party, the facts are as follows:

Midco is a competitive local exchange carrier (CLEC) that operates in several states, including South Dakota, North Dakota, and Minnesota. Among a variety of services, Midco provides telecommunications services to its customers and originating and terminating access services, also described as

switched access service, to long-distance companies. Verizon is a long-distance company that utilizes Midco's switched access service. Because Midco's access charges pertain to interstate and intrastate communications, Midco filed tariffs with the Federal Communications Commission (FCC) and the South Dakota, North Dakota, and Minnesota Public Utilities Commissions.

In March 2007, Midco and Verizon executed a contract for switched access services. The agreement, titled Switched Access Service Agreement, included a three-year term and called for payment at the tariffed rates. In March of 2010, Midco and Verizon extended the term of the Switched Access Service Agreement for four years with additional one-year renewals absent termination by either party. In January of 2016, Verizon notified Midco that Midco had overbilled Verizon in excess of $640,000. Verizon then informed Midco that it would withhold payment for the alleged overbilled amounts until it regained the overbilled amount. Verizon also stated that it would withhold payments it had previously promised to pay in connection with other litigation.[1] At the time the complaint was filed, Verizon had withheld $180,000. Midco filed suit against Verizon, alleging breach of contract and unjust enrichment. Midco also seeks a declaratory judgment under SDCL § 21-24-2.

## DISCUSSION

### I. Motion to Dismiss

Under Rule 12(b)(6), the defendant may move to dismiss for "failure to

---

[1] *See MCI Communications Services Inc., et al. v. 360 Networks (USA) Inc., et al.*, U.S. District Court, District of North Dakota, Civ. No. 3:14-cv-00088.

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court assumes all facts alleged in the complaint are true and construes the complaint in the light most favorable to the plaintiff. The court should dismiss only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). "The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 191 (1984). "A well-pleaded complaint may proceed even if it appears 'that recovery is very remote and unlikely.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer*, 416 U.S. 232, 236 (1974)).

## II.     Filed Rate Doctrine

Section 203(c) of the Communications Act provides that "[n]o carrier, unless otherwise provided by or under authority of this chapter, shall engage or participate in [wire or radio communication] unless schedules have been filed and published in accordance with the provisions of this chapter." 47 U.S.C. § 203(c). It requires CLECs such as Midco to assess interstate access charges against carriers such as Verizon "either by filing tariffs with the [FCC] or by negotiating contracts." *In re Sprint Commc'ns Co. v. N. Valley Commc'ns, LLC*, 26 FCC Rcd. 10780, 10782 (2011). So "until a CLEC files valid interstate tariffs under Section 203 of the Act or enters into contracts . . . for the access services it intends to provide, it lacks authority to bill for those services." *In re*

*AT&T Corp. v. All Am. Tel. Co.*, 28 FCC Rcd. 3477, 3494 (2013)(*All American II*). The filed-rate doctrine provides that "once a carrier's tariff is approved by the FCC, the terms of the federal tariff are considered to be 'the law' and to therefore 'conclusively and exclusively enumerate the rights and liabilities' as between the carrier and the customer." *Iowa Network Servs., Inc. v. Quest Corp.*, 466 F.3d 1091, 1097 (8th Cir. 2006) (quoting *Evanns v. AT&T Corp.*, 229 F.3d 837, 840 (9th Cir. 2000)). Verizon claims that the filed rate doctrine bars Midco's unjust enrichment claim. The filed rate doctrine provides that the Communications Act "preempts claims concerning the price at which service is to be offered, and . . . claims concerning the services that are offered." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 711 (5th Cir. 1999).

### A. Filed Rate Doctrine Applies to Midco's Claims.

First, the court must determine if the filed-rate doctrine applies to this case. Midco states in its complaint that it has "filed with the FCC a tariff which establishes its rates for interstate switched access services." Docket 1 at 2. And Midco acknowledges that it entered into the parties' Switched Access Service Agreement with the understanding that it will "bill to Verizon the rates set forth in its state and federal tariffs as filed." *Id.* at 3. Also, the disputed payments in this action arise from the switched access services provided under the tariff. *See id.* at 4 (stating that "Verizon has failed and refused . . . to acknowledge that the amounts in issue were validly billed and paid pursuant to the parties' Switched Access Service Agreement."). In short, Midco does not allege that any other agreement besides the parties' tariff-based Switched Access Agreement

4

exists. Thus, the filed rate doctrine applies to Midco's claims.

### B. The Filed Rate Doctrine Bars Midco's Claim for Unjust Enrichment.

Second, the court must apply the filed rate doctrine to determine if the filed rate doctrine bars Midco's unjust enrichment claim. There are two main principles underlying the filed-rate doctrine: "(1) nonjusticiability—'preserving the exclusive role of federal agencies in approving rates for telecommunications services that are reasonable by keeping courts out of the rate-making process' and (2) nondiscrimination—'preventing carriers from engaging in price discrimination as between ratepayers.'" *Sancom Inc. v. Quest Commc'n Corp.*, 643 F. Supp. 2d 1117, 1123 (D.S.D. 2009) (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998)). "The application of the filed-rate doctrine does not depend on the nature of the cause of action the plaintiff seeks to bring." *Sancom Inc.*, 643 F. Supp. 2d at 1125. "Rather, 'the focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations.'" *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 488 (8th Cir. 1992). To determine the impact of the court's decision, the court must evaluate the nature of Midco's unjust enrichment claim and the relief it seeks.

Under South Dakota law, "[u]njust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.'" *Hofeldt v. Mehling*, 658 N.W.2d 783, 788 (S.D. 2003) (quoting *Parker v. W. Dakota Insurors, Inc.*, 605

5

N.W.2d 181, 187 (S.D. 2000)). Midco alleges that it provided Verizon with switched access services and that Verizon received a benefit from the services because it could charge its customers for long distance service. Docket 1 at 5. Midco alleges that Verizon now refuses to pay for the services, and it would be inequitable for Verizon to retain the benefit of the services without compensating Midco. *Id.*

In Count I, Midco alleges that Verizon's refusal to pay for its switched access services violates the rates and terms as set forth in its tariffs. *Id.* In Count II, Midco acknowledges that Verizon has refused to pay for the "contracted-for services" described as "origination and termination of long distance calls." *Id.* Origination and termination of long distance calls are also referred to as switched access services.[2] So taking Midco's allegations as true, Midco's claim arises from the type of services specifically covered by the tariff. "Where the services in question are covered by the applicable tariff, the filed rate doctrine bars any request for damages pursuant to the doctrine of unjust enrichment." *Iowa Network Servs.*, 466 F.3d at 1098. The terms of the tariffs exclusively enumerate the rights between Midco and Verizon and Midco cannot use an equitable theory of recovery for services included in its tariff.

But Midco contends that it is permitted to plead unjust enrichment as an alternative theory of recovery and relies on the decision in *Northern Valley*

---

[2] "Switched Access Service" is defined in the Switched Access Agreement as "Exchange Access via switched origination or termination of CMRS Telecommunications Toll Traffic or for Telecommunications Toll Service." Docket 9-1. "Exchange Access" is defined in the Switched Access Agreement as "access to telephone exchange services or facilities for the purpose of origination or termination of telephone toll services." *Id.*

6

*Communications* as support. *See N. Valley Commc'ns, LLC v. AT&T Corp.*, No. 1:14-CV-01018-RAL, 2015 WL 11675666 (D.S.D. Aug. 20, 2015). In *Northern Valley Communications,* Northern Valley and AT&T entered into a valid tariff filed with the FCC for switched-access services. *Id.* at *2. AT&T failed to make several payments to Northern Valley and Northern Valley filed a complaint in the District of South Dakota. *Id.* Count I of the complaint alleged that AT&T failed to make payments for switched access services pursuant to the tariff. *Id.* But Counts II and III alleged unjust enrichment and quantum meruit as alternative theories of recovery. *Id.* The court denied a motion for partial judgment on the pleadings on the equity claims because the parties disputed whether the services were covered by the tariff. *Id.* at *5. The court reasoned that "if the services Northern Valley provided to AT&T were not switched access services, then they fell outside the filed tariff. Conversely, if the services were switched access services, then the tariff would apply . . . and Counts Two and Three must fail." *Id.* *Northern Valley* is unpersuasive in this case.

  Here, neither Midco nor Verizon denies that Midco provided Verizon with switched access services. Midco specifically states in its complaint that it should recover on a theory of unjust enrichment because Midco provided "contracted-for services" to Verizon and Verizon failed to pay the billed amount. Docket 1 at 5. Midco describes the provided services as "access services . . . through the origination and termination of long distance calls" which is the type of switched access service covered by the tariff. *Id.* Thus, *Northern Valley* is factually distinguishable from this case. Also, one day after the *Northern*

*Valley* decision was docketed, the FCC released its decision in *All American III*. There, the FCC clarified that CLECs cannot bill for services provided outside a valid tariff or negotiated contract. *AT&T Corp. v. All Am. Tel. Co.*, 30 FCC Rcd. 8958, 8962, ¶ 13 n.50 (2015) (*All American III*). So not only is *Northern Valley* distinguishable from this case, but the later decision in *All American III* contradicts the reasoning Midco relies on in its brief.

If Midco had alleged that the services it provided were not covered by the tariff, the filed rate doctrine would still bar a claim for unjust enrichment. As this court found in *Sancom*, both the nonjusticiability and nondiscrimination prongs of the filed rate doctrine would be implicated. First, awarding Midco damages based on an unjust enrichment claim would "require the court to determine the value of [switched access services], which amounts to judicial rate-setting." *Sancom*, 643 F.3d at 1126. Second, "an award for unjust enrichment would risk violating the nondiscrimination principle," because the court could end up awarding Midco an amount that is more or less than what Midco's other customers pay for the same services. *Id.* Judicial rate-setting and rate discrimination are barred by the filed rate doctrine. *Marcus*, 138 F.3d at 58; *Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 223 (1956).

The FCC recently reaffirmed this court's *Sancom* holding in the *All American* cases. In 2013, the FCC found that CLECs that had billed for "access services that they did not provide pursuant to valid and applicable interstate tariffs" violated Sections 201(b) and 203 of the Communications Act. *All American II*, 28 FCC Rcd. 3477, 3492, ¶ 34 (2013). In 2015, the FCC made

clear that CLECs cannot pursue alternate damage theories, such as unjust enrichment, for services provided outside a valid tariff or negotiated contract. *All American III*, 30 FCC Rcd. at 8962, ¶ 13 n.50. The purpose of the prohibition is to prevent CLECs from avoiding regulation by the FCC. *Id.* Several other districts also agreed with this court's reasoning in *Sancom*.[3] Thus, if Midco did provide Verizon services that are not covered under the parties' tariff and accompanying Switched Access Agreement, then Midco violated the Communications Act and it cannot charge Verizon for those services.

Because this court finds that Midco and Verizon had a valid tariff, the tariff exclusively governs the rights and liabilities between Midco and Verizon as to switched access services. Thus, the filed rate doctrine bars any claim for unjust enrichment arising from the tariff, and Midco is prohibited from collecting money for services provided that fall outside the tariff. Midco cannot plead any set of facts that would entitle it to relief on its unjust enrichment claim.

It is ORDERED that

1. Verizon's motion to dismiss (Docket 8) Count II of Midco's complaint is granted.

---

[3] *See, e.g.*, *XChange Telecom Corp. v. Sprint Spectrum L.P.*, No. 1:14-cv-54, 2014 WL 4637042, at *5 (N.D.N.Y. Sep. 16, 2014) (finding that the plaintiff could not charge for services provided outside the tariff and dismissing equitable claims to recover for services provided within the tariff); *Peerless Network, Inc. v. MCI Commc'n Servs, Inc.*, No. 14 C 7471, 2015 WL 2455128 (N.D. Ill. May 21, 2015)(dismissing plaintiff's equitable charges because the filed rate doctrine bars recovery for services provided outside of a filed tariff or negotiated contract); *Connect Insured Tel., Inc. v. Quest Long Distance, Inc.*, No. 10-CV-197-D, 2012 WL 2995063, at *2 (N.D. Tex. July 23, 2012) (dismissing equitable claims because the filed rate doctrine prohibits parties from enforcing provisions of a tariff through an equitable claim).

2. Count III of Midco's complaint is dismissed to the extent it seeks relief based on Count II.

Dated November 18, 2016.

                        BY THE COURT:

                        */s/Karen E. Schreier*
                        KAREN E. SCHREIER
                        UNITED STATES DISTRICT JUDGE